### PREFERRED LIFE INS. CO. v. STEPHENVILLE HOSPITAL et al.

No. 2993.

Court of Civil Appeals of Texas. Eastland.

Feb. 20, 1953.

Rehearing Denied March 20, 1953.

Alto B. Cervin, W. S. Barron, Jr., Jack Titus, Dallas, R. L. Thompson, Stephenville, for appellant.

Ennis Favors, Stephenville, for appellees.

COLLINGS, Justice.

This suit was brought by Stephenville Hospital, a partnership, composed of Dr. J. C. Terrell, Dr. Vance Terrell and Dr.

Bruce Terrell, against Preferred Life Insurance Company, a corporation, upon a health and accident policy. Before the trial of the cause, amended pleadings were filed in which the surviving heirs at law of Laura Lou Aylor were joined as additional parties plaintiff. The plaintiffs alleged that the policy was issued by the Company to Laura Lou Aylor on February 19, 1951; that on February 16, 1952, the Stephenville Hospital, relying upon the provisions of the insurance policy, accepted the said Laura Lou Aylor as a patient and extended to her its services and facilities during the period of her illness and until the time of her death on May 15, 1952; that Mary Lou Aylor, in writing, authorized the hospital to collect for her all benefits due under the policy and authorized the insurance company to pay the costs of such benefits to the hospital. It was alleged that during the time deceased was confined in the hospital she was furnished surgical and hospital services covered in the policy in the amount of $1,222.60; that a written physician's report and proof of loss was furnished by the hospital to the insurance company and written demands were made for the payment of such services and charges but that the company has failed and refused to pay same. Plaintiff prayed for judgment against the company for the charges alleged to be due under the terms of the policy in the sum of $1,222.60, for a twelve per cent statutory penalty in the sum of $146.71, for $500 attorneys' fees and costs. A trial was had before the court without a jury and judgment entered for plaintiffs as prayed. Preferred Life Insurance Company has brought this appeal.

It is urged by appellant company that judgment in the sum of $1,222.60 for the hospital and surgical expenses is excessive and violates the terms of the policy. The policy provided that the company insured Laura Lou Aylor and would pay to her certain benefits; provided for hospital confinement and other specified expenses actually incurred by the insured while the policy was in force. The portion of the policy relating to hospital expenses and benefits is as follows:

"If the insured or any member of the Family Group shall be necessarily confined within a recognized Hospital as a Resident patient on account of such injury or sickness, the Company will pay the Insured (or the Hospital if authorized by the Insured to do so) for the following items of hospital expense actually incurred but not to exceed the amounts stated below:

"A. Hospital Room, including meals and general nursing care, not to exceed $8.00 per day, for the period that the Insured or member of the Family Group shall be confined therein but not to exceed One Hundred Days as a result of any one accident or sickness.

"B. Use of Operating Room, the regular and customary charge for such services.

"C. Use of Cystoscopic Room, the regular and customary charge for such services.

"D. Anesthesia, including fee of anesthetist and materials used, not to exceed Twenty Dollars ($20.00) for a respiratory anesthetic, Ten Dollars ($10.00) for a spinal anesthetic or Five Dollars ($5.00) for a local anesthetic.

"E. Laboratory Service, not to exceed Seven Dollars and Fifty Cents ($7.50).

"F. X-ray Photographs, not to exceed Ten Dollars ($10.00) but not to include Dental X-ray or X-ray used as treatment.

"G. Hypodermics (injection or narcotics for the relief of pain) the regular and customary charge for such services.

"H. Medicines (other than Penicillin or Streptomycin, not to exceed Ten Dollars ($10.00).

"I. Penicillin or Streptomycin, not to exceed Fifteen Dollars ($15.00.)

"J. Surgical Dressings and supplies, including casts and splints, the regular and customary charge.

"K. Basal Metabolism tests, the usual and customary charge.

"L. Electrocardiograms, the usual and customary charge.

"M. Oxygen, including use of oxygen tent or other equipment for administering oxygen, the regular and customary charge.

"N. Blood Transfusions, the regular and customary charge, not to exceed Twenty Five Dollars ($25.00).

"O. Hydrotherapy, the usual and customary charge.

"P. Physiotherapy, the usual and customary charge.

"Q. Use of Iron Lung, or other equipment for artificial respiration, not to exceed Two Hundred and Fifty Dollars ($250.00)."

The itemized statements for hospital and medical services introduced in evidence by appellees and relied upon as a basis for judgment shows the following charges:

"Room, Board and Nursing
   Service (89 days at $8.00
   per day ................ $712.00
Anesthesia (respiratory an-
   esthetic) ..............   20.00
Operating or Delivery Room   20.00
   Laboratory .............   25.00
Medicines and Intravenous
   solutions ..............   57.60
Blood Transfusions .......   25.00
Surgery ..................   75.00
Surgical Dressings .......   15.00
Penicillin ...............    4.00
Glucose ..................  339.00
Alcodex ..................    5.00."

It is urged by appellants that the charge of $25 for laboratory services should be reduced by $17.50 to comply with the $7.50 limitation of liability for such services as provided in the policy and that the charges of $57.60 for "medicines and intravenous solutions," $339 for Glucose and $5 for Alcodex, amounting to a total of $401.60, should be reduced by the sum of $391.60 to comply with the $10 limitation provided by the policy for medicines.

The point is, in our opinion, well taken. The policy specified certain items of expense which were insured against and the limit of liability for each such item. Appellees proved certain items of expense in excess of the policy limit for such items and judgment was granted therefor. As contended by appellant, the judgment should be reduced by the extent of the excess. We cannot agree with appellees' contention that the questioned and excessive items were proved to be within the limits of the policy by the testimony of their witness who stated that she had compared the charges with the benefits provided in the policy and that the charges were in accord with the policy. Nor can we agree that the item "hypodermics," which was described and defined in the policy as being an "injection for the relief of pain" can be interpreted to include glucose. The interpretation of the terms of the policy is for determination by the court. Glucose is defined as "corn sirup, a sweet sirupy liquid made by the incomplete hydrolysis of starch; a name sometimes used for dextrose." The injection of glucose into the veins is well known to be for the purpose of nourishment and not for the relief of pain.

It is further contended by appellees that appellant company submitted no pleadings or proof in the trial court that the amount sought and recovered exceeded the policy limitations, and that the matter has therefore been waived and cannot now be urged by the company. In support of this contention, appellees rely upon the provisions of Rule 94, Texas Rules of Civil Procedure, the relevant portion of which is as follows:

"Where the suit is on an insurance contract which insures against certain general hazards, but contains other provisions limiting such general liability, the party suing on such contract shall never be required to allege that the loss was not due to a risk or cause coming within any of the exceptions specified in the contract, nor shall the insurer be allowed to raise such issue unless it shall specifically allege that the loss was due to a risk or cause coming within a particular exception to the general liability; provided that nothing herein shall be construed to

change the burden of proof on such issue as it now exists."

■ Appellees had the burden of establishing their right to recover. This they did by introducing in evidence the insurance policy which by its terms limited their recovery to specific amounts for designated services as set out and provided therein. Such limitation of liability is not an exception to the "general liability" provided by "other provisions limiting such general liability" but is inherent in the provisions of the policy which define the maximum liability in the first instance. The limitation was, therefore, a part of and inseparable from the "general liability" as referred to in Rule 94, supra. It was not such a limitation of or exception to the general liability as referred to in the rule which the insurer was prohibited from urging without special allegations. Alamo Cas. Co. v. Richardson, Tex.Civ.App., 235 S.W.2d 726 (Writ Ref., N.R.E.).

Art. 3.62, Vernon's Texas Civil Statutes, Insurance Code, provides:

"In all cases where a loss occurs and the life insurance company, or accident insurance company, or life and accident, health and accident, or life, health and accident company liable therefor shall fail to pay the same within thirty days after demand therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve (12%) per cent damages on the amount of such loss together with reasonable attorney fees for the prosecution and collection of such loss. Such attorney fee shall be taxed as a part of the costs in the case. The Court in fixing such fees shall take into consideration all benefits to the insured incident to the prosecution of the suit, accrued and to accrue on account of such policy."

It is contended by appellant that the court erred in granting judgment for the sum of $146.71 as a statutory penalty for failure to pay within thirty days after demand and the sum of $500 as attorneys fees and that the action of the court in so doing is wholly without basis of law. It is urged that no demand as required by the statute was made on appellant. Relevant to the matter under consideration is the testimony of the Secretary of the hospital who stated that she sent to appellant by mail, reports by the two attending physicians complete with itemized statements for services performed. Copies of these reports were introduced in evidence as plaintiff's exhibits one and two. The following authorization was set out on the back of each of the reports:

"Authorization and Release to Hospital and to Physician and Surgeon (Not to be used in Workmen's Compensation cases)

"I hereby authorize Preferred Life Insurance Company to pay directly to Stephenville Hospital and directly to Dr. J. C. Terrell all benefits due me, if any, by reason of services described in the statements rendered, and as provided for in contract No. P68–5346 with aforementioned insurance company. I completely release them to the extent of the payment made. I will pay, at Stephenville, Texas, for all such charges incurred or for all such charges in excess of whatever sums may be paid by the insurance company above-mentioned.

"Furthermore, I instruct the above-named hospital and Dr. J. C. Terrell to give to the insuring company named above all information which is necessary to the determination of my just benefits.

"Date: 2/16/52

(Signed) Mrs. Lou Aylor "Stephenville, Texas."

■ It has been held that the above cited statute is penal and must be strictly construed. Metropolitian Life Ins. Co. v. Wann, 130 Tex. 400, 109 S.W.2d 470, 115 A.L.R. 1301; First Texas Prudential Ins. Co. v. Long, Tex.Com.App., 46 S.W.2d 297.

■ The portion of the exhibits relied upon by appellants to constitute a demand was designated as a "report on hospital services" and under the heading "hospital charges" purported to itemize the charges

made for such services. An examination of the exhibits indicates the instruments were, as denominated, reports rather than demands for payment. It has been held that the filing of proof of death, injury or loss, even when accompanied by filing suit, does not amount to a demand under the statute. Mutual Life Insurance Co. v. Ford, 103 Tex. 522, 131 S.W. 406; Washington Fidelity Nat. Ins. Co. v. Williams, Tex.Com.App., 49 S.W.2d 1093; National Life & Accident Ins. Co. v. Dove, Tex. Civ.App., 167 S.W.2d 257, affirmed 141 Tex. 464, 174 S.W.2d 245.

For the reasons stated, the judgment of the trial court is reformed by eliminating recovery for statutory penalty and attorneys fees and by reducing recovery against appellant to the sum of $813.50. As so reformed, the judgment is affirmed.

### On Motion for Rehearing.

Appellees urge in their motion for rehearing that we erred in striking from the judgment statutory penalty and attorney's fees and in holding that their exhibits one and two were reports rather than demands for payment. Each of the exhibits was composed of two sheets of paper, one designated "Report on Hospital Services" and the other, "Attending Physician's Report." The sheets were in the nature of printed forms, the blanks of which had been filled in, giving designated information. Each of the reports was addressed to Preferred Life Insurance Company, Dallas, Texas, gave the patient's name, her insurance policy number, the name of the hospital, the attending physician, a diagnosis of the patient's illness, the treatment administered, the date of the report, the period of time covered by the report, and under the heading "Hospital Charges" listed an itemized statement of services performed and charges therefor. At the bottom of each sheet of the report was printed the following:

"This blank can be utilized for both 'First' or 'Preliminary' report and for 'Final' Report. Any questions not answered on first occasion will be completed on the final report. These reports will be amplified by reports by

letter when requested. On certain occasions authorization will be requested by wire for clients. This form advocated by The Texas Hospital Association and the Private Clinic and Hospital Association of Texas for use of their members."

On the back of the sheet designated "Report on Hospital Services" was set out the "Authorization for Release to Hospital and to Physician and Surgeon," as heretofore shown in our main opinion. The first report (Exhibit One) was dated and sent by the secretary of the hospital to appellant insurance company on April 17, 1952 and purported to cover the period from the date of the patient's admission to the hospital to the date of the report. The authorization on the back of the sheet designated "Report on Hospital Services" purported to be signed by the patient on February 16, 1952, the date of her admission to the hospital.

The authorization, in our opinion, does not amount to a demand when considered in connection with the remaining portion of Exhibit One of which it is a part. The patient did authorize the company to pay the hospital or the doctor any benefits which might be due the patient but there was no demand or request for payment. Both sheets of the Exhibit are designated and referred to by the language used therein as Reports. It is specifically stated that the blanks may be used as either "first" or "preliminary" reports and also as a "final" report. Exhibit One does not indicate whether it was preliminary or final, but does show that the patient was still in the hospital. On the basis of the authorities cited in our original opinion which hold that the statute is penal and to be strictly construed, we conclude that Exhibit One, when considered as a whole, does not constitute a demand.

The second report (Exhibit Two) dated May 15, 1952, covered the period intervening between the first report and the death of the patient on May 15, 1952. It was in form and substance similar to Exhibit One except that the second report had typed thereon the following notation: "Claim filed earlier covering period from

2-16-52 to 3-29-52." It is urged by appellees that this notation demonstrates that such report was presented as a claim. Even if it should be held that the above described notation considered in connection with the remaining portion of Exhibit Two was sufficient to constitute a demand for payment, there was still no proper demand. The second report was made by the Secretary of the Hospital after the death of the patient. Considered in its most favorable light to appellees, the "authorization and release to Hospital and to Physician and Surgeon" could be no more than a power of attorney, and not an assignment, and it expired at the death of the patient. The hospital and the doctor had no right or power to make a demand upon the insurance company after the death of the patient because the claim then belonged to the surviving heirs at law of the deceased.

The motion for rehearing is overruled.